UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------X   Case No.: 2:21-14540
SHANTAYA SUGGS,

                Plaintiff,

                                                                       **COMPLAINT**

   -against-

                                                                     Plaintiff Demands a

QUEST DIAGNOSTICS INCORPORATED,          Trial by Jury
INTEGRATED RESOURCES INC., MEDICAL
STAFFING SERVICES, INC., and JESSE NOLL,
individually,

                       Defendants.
-------------------------------------------------------------------X

Plaintiff, Shantaya Suggs, by and through her attorneys, Arcé Law Group, P.C., hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII"), and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD") based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by her former employer on the basis of her sex, together with sexual harassment, creating a hostile work environment, retaliation, and unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §2000e et seq.; 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction thereto.

1

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the District of New Jersey. 28 U.S.C. §1391(b).

5. On or about April 12, 2021, Plaintiff filed three (3) separate charges of discrimination against Defendants in the Equal Employment Opportunity Commission ("EEOC").

6. On or about July 14, 15, and 20, 2021, respectively, Plaintiff received Notice of Right to Sue Letters from the EEOC for the aforementioned charges.

7. This action is brought within ninety (90) days of said Notice of Right to Sue Letters.

## PARTIES

8. Plaintiff is a female resident of the State of New Jersey, Essex County.

9. At all times material, Defendant QUEST DIAGNOSTICS INCORPORATED (hereinafter referred to as "QUEST DIAGNOSTICS") was and is a foreign business corporation duly incorporated under the laws of the State of Delaware.

10. At all times material, Defendant QUEST DIAGNOSTICS was and is a foreign business corporation duly authorized to operate under the laws of the State of New Jersey.

11. At all times material, Defendant QUEST DIAGNOSTICS was and is a foreign business corporation which does operate under the laws of the State of New Jersey.

12. At all times material, Defendant QUEST DIAGNOSTICS was and is a nationwide provider of diagnostic and clinical testing which operates a laboratory/testing facility located at 1 Malcolm Ave, Teterboro, New Jersey 07608.

13. At all times material, Defendant INTEGRATED RESOURCES, INC. (hereinafter referred to as "INTEGRATED RESOURCES") was and is a domestic business corporation duly incorporated under the laws of the State of New Jersey.

14. At all times material, Defendant INTEGRATED RESOURCES was and is a staffing agency which provides staffing services to various clients throughout the United States, Canada, and India.

15. At all times material, Defendant INTEGRATED RESOURCES provides employee staffing services to Defendant QUEST DIAGNOSTICS.

16. At all times materiel, Defendant MEDICAL STAFFING SERVICES, INC. (hereinafter referred to as "MEDICAL STAFFING") was and is domestic business corporation duly incorporated under the laws of the State of New Jersey.

17. At all times material, Defendant MEDICAL STAFFING was and is a staffing agency which provides staffing services to various clients throughout the United States.

18. At all times material, Defendant MEDICAL STAFFING provides employee staffing services to Defendant QUEST DIAGNOSTICS.

19. At all times material, JESSE NOLL (hereinafter referred to as "NOLL") was and is a male resident of the State of New Jersey.

20. At all times material, Defendant NOLL was working for Defendant QUEST DIAGNOSTICS and Defendant MEDICAL STAFFING as a "Lab Technician."

21. At all times material, Defendant INTEGRATED RESOURCES and Defendant QUEST DIAGNOSTICS were and are Plaintiff's joint employers, in that Plaintiff was hired to work for Defendant QUEST DIAGNOSTICS but was paid by Defendant INTEGRATED RESOURCES.

22. Defendant QUEST DIAGNOSTICS, Defendant INTEGRATED RESOURCES, Defendant MEDICAL STAFFING, Defendant NOLL are herein collectively referred to as "Defendants."

23. At all times material, Plaintiff was an employee of Defendant QUEST DIAGNOSTICS and Defendant INTEGRATED RESOURCES.

## MATERIAL FACTS

24. In or around the beginning of July 2020, Plaintiff submitted an online job application for a "Lab Specimen Technician" position with Defendant QUEST DIAGNOSTICS' laboratory/testing facility.

25. Later that month, Defendant INTEGRATED RESOURCES' "Human Resources (HR) Manager," Margie Rodriguez, interviewed Plaintiff for the position.

26. After the interview, Ms. Rodriguez offered Plaintiff the "Lab Specimen Technician" position with Defendant QUEST DIAGNOSTICS, and Plaintiff accepted.

27. On or about July 27, 2020, Plaintiff began working for Defendants as a "Lab Specimen Technician" at their 1 Malcolm Avenue, Teterboro, NJ 07608 location. Plaintiff's duties included preparing and testing specimens, processing COVID-19 bloodwork, and data entry.

28. Shortly after the beginning of Plaintiff's employment, Defendant NOLL, who was employed at Defendant QUEST DIAGNOSTICS through a separate staffing agency, Defendant MEDICAL STAFFING, began to sexually harass and proposition Plaintiff at work.

29. For example, on or about July 28, 2020, Defendant NOLL approached Plaintiff while she was walking down a hallway, leered at her body and stated, "Girl, you're super thick." Plaintiff ignored Defendant NOLL and quickly walked away.

30. Later that same day, Defendant NOLL approached Plaintiff again while she was eating lunch in the cafeteria. In the presence of a female coworker, Caren (last name currently unknown),

Defendant NOLL asked Plaintiff, "You got a boyfriend?" Hoping that it would end the harassment, Plaintiff replied, "I'm dating someone." However, Defendant NOLL persisted, "You should let me be your side nigga. That butt is heavy too. I could do a lot with that. If you do something for me, I'll do something for you." Plaintiff did not respond, stood up from the lunch table and returned to her post.

31. On or about July 29, 2020, Defendant NOLL approached Plaintiff, leered at her body, and stated, "You're super thick. Your body is like a 'ten,' but your face is like a 'seven.'" Plaintiff just tried to focus on her duties.

32. In or around the beginning of August 2020, during an all-staff meeting, Defendant NOLL approached Plaintiff from behind and whispered in her ear, "I see why your boyfriend likes you. That 'nani' (vagina) must be good." Plaintiff told Defendant NOLL to leave her alone and tried to focus on the meeting.

33. Initially, Plaintiff did not make a formal complaint to Defendants because she had only been working at Defendant QUEST DIAGNOSTICS for a week, and she feared that complaining would negatively impact her employment. As a result, the harassment continued and escalated to unwanted physical touching.

34. For example, on or about August 20, 2020, as Plaintiff and Caren were leaving the cafeteria, Defendant NOLL unexpectedly appeared and began rubbing Plaintiff's arm, stating, "You're so soft." Plaintiff turned around and yelled, "Stop touching me!" Defendant NOLL replied, "I was just playing, but I see you're in a bad mood."

35. The next day, on or about August 21, 2020, while Plaintiff was eating lunch with Caren in the cafeteria, Defendant NOLL again approached their table and leered at Plaintiff. Plaintiff turned to Caren and complained about Defendant NOLL's ongoing harassment. Caren told Plaintiff

that Defendant NOLL had also sexually harassed other female employees at Defendant QUEST DIAGNOSTICS.

36. On or about August 22, 2020, Defendant NOLL sat at Plaintiff's lunch table, began rubbing Plaintiff's shoulder, near her bra strap, and said, "Is this how your man would touch you? When are you going to call me?" Plaintiff quickly moved away, gathered her belongings, and left the cafeteria.

37. On or about August 23, 2020, while she was working alongside Caren, Plaintiff realized that her bra strap had come undone, and asked Caren for assistance. Defendant NOLL unexpectedly approached Plaintiff and Caren and said, "Let me see. I'll do it! Didn't I tell you to call me?" Plaintiff replied, "Why do you keep telling me to call you? I don't want your number!" Defendant NOLL simply laughed and walked away.

38. Over the next several days, and despite her repeated rejections of his sexual advances, Defendant NOLL continued to harass Plaintiff by blowing her kisses and licking his lips whenever he saw her at work or in the cafeteria.

39. On or about August 26, 2020, unable to endure further sexual harassment, Plaintiff approached Defendant QUEST DIAGNOSTICS' "Floor Supervisor," Samantha (last name currently unknown), and complained about Defendant NOLL's sexual advances. Plaintiff also informed Samantha that Caron witnessed Defendant NOLL's harassment, and would corroborate her claims.

40. Plaintiff also complained to Samantha that she felt unsafe in the workplace knowing that Defendant NOLL had also sexually harassed other female employees. In response, Samantha confirmed that Defendant NOLL was already under investigation for allegations of sexual

harassment by other employees, but assured Plaintiff that Defendants' HR would investigate her complaints.

41. However, later that same week, Caren told Plaintiff that Samantha had approached her and told her to "stay out of the situation and not to pick sides."

42. Defendants failed to seriously investigate Plaintiff's claims and attempted to intimidate Caren, Plaintiff's witness, from supporting her claims. Samantha's actions were intended to interfere with Plaintiff's protected rights, and to retaliate against her for her complaint.

43. Additionally, Defendants continued to schedule Plaintiff to work the same shifts as Defendant NOLL, and the harassment continued.

44. For example, on or about August 27, 2020, the next day, Defendant NOLL approached Plaintiff, leered at her and stated, "You're thick. You remind me of my niece." Plaintiff did not respond.

45. On or about August 29, 2020, Samantha called Plaintiff into a conference room to discuss her complaint against Defendant NOLL. During the meeting, Samantha informed Plaintiff that Defendants had concluded their investigation, stating, "[Defendant NOLL] says he didn't do anything. It's a 'he said, she said' situation."

46. Based on Samantha's response, Plaintiff realized that Defendant QUEST DIAGNOSTICS did not intend to remedy the harassment and/or prevent further harassment. Therefore, Plaintiff told Samantha that she intended to escalate her complaint to her employment agency, Defendant INTEGRATED RESOURCES.

47. On or about September 2, 2020, Plaintiff telephoned Defendant INTEGRATED RESOURCES' "HR Manager," Margie Rodriguez, and requested the day off from work in

order to address an onset of various flu-like symptoms. Ms. Rodriguez approved Plaintiff's request.

48. The next day, Plaintiff was hospitalized and diagnosed with an upper respiratory infection.

49. On or about September 4, 2020, in a text message, Ms. Rodriguez unexpectedly notified Plaintiff that her employment with Defendant QUEST DIAGNOSTICS was terminated. Ms. Rodriguez did not give Plaintiff a reason for her termination.

50. That same day, Plaintiff telephoned Ms. Rodriguez to inquire about Defendant QUEST DIAGNOSTICS' reason for terminating her employment. Ms. Rodriguez again stated that Defendant QUEST DIAGNOSTICS did not give a reason for terminating Plaintiff's employment. During the call, Plaintiff also complained about Defendant QUEST DIAGNOSTICS' failure to take remedial action against Defendant NOLL for his sexually inappropriate conduct. Ms. Rodriguez simply told Plaintiff that she had no knowledge of Plaintiff's sexual harassment complaint against Defendant NOLL.

51. The above are just some of the examples of harassment and discrimination that Plaintiff had to endure while working for Defendants.

52. Defendants terminated Plaintiff one (1) week after her formal complaint of sexual harassment.

53. Defendants would not have harassed Plaintiff but for her sex.

54. Defendants would not have retaliated against Plaintiff but for her opposition to their unlawful conduct.

55. Defendants would not have terminated Plaintiff's employment but for her opposition to their unlawful conduct.

56. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

57. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress and physical ailments.

58. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

59. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendants.

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## DISCRIMINATION
## (Against the Corporate Defendants Only)

60. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964; 42 U.S.C. Section(s) 2000e et Seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

62. Defendant QUEST DIAGNOSTICS, Defendant INTEGRATED RESOURCES, and Defendant MEDICAL STAFFING engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her sex, together with sexual harassment, creating a hostile work environment, retaliation, and unlawful termination.

**AS A SECOND CAUSE OF ACTION**
**UNDER TITLE VII**
**RETALIATION**
**(Against the Corporate Defendants Only)**

63. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

64. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

   "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

65. Defendant QUEST DIAGNOSTICS, Defendant INTEGRATED RESOURCES, and Defendant MEDICAL STAFFING engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to Defendants' unlawful employment practices.

**AS A THIRD CAUSE OF ACTION**
**UNDER THE NJLAD**
**DISCRIMINATION**

66. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual

orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

68. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex, together with sexual harassment, creating a hostile work environment, retaliation, and unlawful termination.

69. Defendants violated all other applicable sections of N.J. Stat. § 10:5.

70. As such, Plaintiff has been damaged as set forth herein.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE NJLAD
## **RETALIATION**

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: d) For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that

person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."

73. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because she complained of Defendants' unlawful employment actions.

74. Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(d) *et. seq*.

75. As such, Plaintiff has been damaged as set forth herein.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII and the NJLAD, and that Defendants discriminated against Plaintiff on the basis of her sex, together with sexual harassment, creating a hostile work environment, retaliation, and unlawful termination;

B. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful discharge and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Bryan S. Arce, Esq. as trial counsel.

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned attorney for Plaintiff hereby certifies that the matter in controversy is not the subject of any other action or arbitration proceeding pending or contemplated, nor are there any other parties known to Plaintiff who should be joined in this proceeding.

Dated:  August 3, 2021
       New York, NY

By:    /s/Bryan Arce, Esq.
        **Arcé Law Group, P.C.**
        *Attorneys for Plaintiff*
        Bryan S. Arce, Esq.
        Attorney ID#: 025882009
        Silvia C. Stanciu, Esq., Of Counsel
        Attorney ID #: 166552016
        45 Broadway, Suite 430B
        New York, NY 10006
        (212) 248-0120